UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
HARVEY ROSENFELD,                                                       :
                                                                        :
                                   Plaintiff,                           :        10 Civ. 3081 (JMF)
                                                                        :
                -v-                                                     :        OPINION AND ORDER
                                                                        :
HOSTOS COMMUNITY COLLEGE,                                               :
                                                                        :
                                   Defendant.                           :
                                                                        :
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: Mar 29, 2013

JESSE M. FURMAN, United States District Judge:

Plaintiff Harvey Rosenfeld ("Rosenfeld"), proceeding *pro se*, brings this action pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, claiming that Defendant Hostos Community College ("HCC") discriminated against him in not reappointing him as an adjunct professor. (*See* Compl. (Docket No. 1)). Both Plaintiff and Defendant have moved for summary judgment. (Docket Nos. 42, 49). For the reasons discussed below, Plaintiff's motion is denied, Defendant's motion is granted, and the Complaint is dismissed.

## BACKGROUND

HCC is a two-year community college within the City University of New York ("CUNY") public education system. (Diaz Decl. (Docket No. 44) ¶ 3). At all times relevant to this case, the English Department at HCC employed both full-time professors and adjunct professors. (*Id.* ¶ 5). Adjuncts were appointed on a semester-by-semester basis, based on student enrollment, course offerings, the availability of full-time professors, and the needs of the Department. (*Id.* ¶ 8). From 2006 to 2008, for example, the HCC English Department employed

approximately twenty to twenty-five adjunct faculty. (*Id.* ¶ 9). Adjuncts at HCC are unionized. At the relevant time, Article 9 of the collective bargaining agreement (the "CBA") between the union and CUNY governed the appointment and reappointment of faculty. (Ng Decl. (Docket No. 46) ("Ng Decl. I") Ex. D). Article 9.9 of the CBA provided that adjunct faculty were not entitled to a statement of reasons if not reappointed. (*See id.* art. 9.9).

Rosenfeld started teaching English courses at HCC as an adjunct professor in 1986, when he was approximately 47 years old. (*Id.* Ex. B ("Rosenfeld Dep."), at 22:10, 22:21-23:5). Over the next twenty-two years, Rosenfeld taught every semester, save "one or two" when he either did not apply for reappointment or there were scheduling conflicts. (*Id.* at 36:20-37:5). Plaintiff alleges that, during that time, co-workers made several comments relating to his age. For example, Professor Susan Dicker, Deputy Chair of the English Department, described Rosenfeld's ideas as "old" or "old-fashioned," and Professor Kathleen Kane asked whether he was "a retired school teacher." (*Id.* at 62:8-16, 63:18-21). In addition, during Rosenfeld's time at HCC, Carmen Diosa, the English Department Chair's secretary, regularly referred to him as "el viejo" — that is, Spanish for "the old one." (*Id.* at 61:7-21; Pl.'s Opp'n 8). Rosenfeld contends — without evidentiary support — that Diosa's role in the department was more than that of a standard secretary and that she essentially ran the department. (Pl.'s Opp'n 8). In his Complaint, however, he conceded that Diosa's references were "[p]erhaps comical and in the spirit of good fun." (Compl. at 4 ¶ 10).

In the Fall 2007 semester, Rosenfeld taught English 111, titled Literature and Composition. (Ng Decl. I Ex. H; Diaz Decl. ¶ 10). After the course, eight out of the twenty-eight students completed teaching evaluations, rating Rosenfeld in seven categories. (*Id.* at 2). (Although not high, the response rate for students in Rosenfeld's course was apparently

consistent with the response rates of other professors in the English Department. (*Id.* at 1).) Of the nineteen professors and adjunct professors who taught English 111 that semester, Rosenfeld's student evaluations were by far the lowest. (*Id.*). Indeed, Rosenfeld's "General Teaching Index" ("GTI"), some sort of composite score, was only 1.73, while the course and departmental averages were 3.64 and 3.77, respectively. (*Id.* at 2). Moreover, only one other English 111 professor had a GTI lower than 3.00, and it was a 2.97. (*Id.* at 1). Furthermore, no other English 111 professor had any individual category score below 2.00, while five of Rosenfeld's seven scores were below threshold. (*Id.*).

In March 2008, Professor Diana Diaz, then the Chair of the English Department, assigned Professor Carl Grindley to conduct a classroom observation of Rosenfeld's English class. (Diaz Decl. ¶¶ 4, 18). After providing notice to Rosenfeld that the observation would occur, Grindley observed Rosenfeld's class on March 11, 2008. (Ng Decl. I Ex. G, at 1, 4).[1] In a follow-up report, Grindley gave Rosenfeld some high marks. For example, Grindley praised Rosenfeld's lesson plan and "mastery of the subject matter," his "[u]se of the board," and his assistance to students in understanding the class's "complex themes," among other things. (*Id.* at 2). Not all of Grindley's comments were so positive, however, especially with respect to Rosenfeld's management of the "classroom atmosphere and learning environment." (*Id.* at 3). Grindley found that the "[c]lass started a little slowly" and that "many [students] were late: two students arrived over half an hour late and one was 45 minutes late." (*Id.*). Grindley also noted that "[s]ome students presented serious behavioral problems": one student, for example, fell asleep and, upon being woken up, did homework for another class; and several other students "did not

---

[1] Both the Notice of Observation Report and the Post-Observation Conference Memoradum, which are cited here, indicate that Grindley's observation occurred on March 11, 2008. The Observation Form itself, however, is dated March 3, 2008. This discrepancy is immaterial to the outcome of the case.

appear to be paying attention or making any attempt to follow the material." (*Id.*). Based on his observations, Grindley rated Rosenfeld's lesson "satisfactory." (*Id.*).

On April 17, 2008, the Personnel and Budget ("P&B") Committee of the HCC English Department met to discuss recommendations for the reappointment of adjunct professors for the fall 2008 semester. (Diaz Decl. ¶¶ 12, 19). The P&B Committee at that time was composed of Diaz, Dicker, Kane, Cynthia Jones, and Nelly Teresa Justicia. (*Id.* ¶ 13). After allegedly considering Grindley's assessment and the student evaluations, the P&B Committee voted not to recommend the reappointment of Rosenfeld, then sixty-nine years old, and one other adjunct faculty member, while recommending reappointment of eighteen other adjunct professors. (*Id.* ¶¶ 23, 26-27). The other adjunct who was not recommended for reappointment was then thirty-eight years old, while the eighteen adjuncts recommended for reappointment included professors aged seventy-eight, sixty-five, sixty-three, sixty-two, and sixty-one — that is, older than, or similar in age to, Rosenfeld. (*Id.* ¶¶ 26-27).

After receiving notice that he was not getting reappointed, Rosenfeld spoke with Dicker, who allegedly refused to provide him with a substantive reason for the decision. (Pl.'s Opp'n 14). Additionally, Rosenfeld contends that Diaz told another faculty member that Rosenfeld was not reappointed because of student complaints and because he had previously filed grievances. (*Id.* at 15). In any case, after the decision was made, Rosenfeld filed a grievance alleging that the decision not to reappoint him was the result of age discrimination. (Pl.'s Opp'n Ex. A). In April 2012, the grievance was the subject of an arbitration proceeding, in which Rosenfeld was represented by the adjunct faculty union. (Ng. Decl. (Docket No. 51) ("Ng Decl. II") Ex. 1). After a hearing in which both sides were represented by counsel and had an opportunity to present evidence, the arbitrator found in HCC's favor. (*Id.* at 9-10; *see also id.* at

9 ("Rosenfeld's contention that he was let go because of his age is unsupported by the record.")). Most relevant for present purposes, the arbitrator found that "there is no evidence of probative value that [Rosenfeld] was let go due to his age." (*Id.* at 8).

## DISCUSSION

### A. Summary Judgment

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine if the "evidence is such that a reasonable jury could return a judgment for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

5

When, as in this case, both sides move for summary judgment, the district court is "required to assess each motion on its own merits and to view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of that party." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011). Thus, "neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993).

To defeat a motion for summary judgment, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted). Affidavits submitted in support or in opposition to summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show "that the affiant is competent to testify to the matters stated therein." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).[2]

It is well established that the "special solicitude" afforded to *pro se* litigants extends to the opposition to a motion for summary judgment. *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). Thus, a *pro se* party's papers opposing summary judgment are to be read liberally and interpreted to raise the strongest arguments that they suggest. *See, e.g.*, *Clinton v.*

---

[2] Although Rule 56 of the Federal Rules of Civil Procedure was amended and reorganized in 2010, the advisory committee notes indicate that "[t]he standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56 advisory committee's note.

*Oppenheimer & Co. Inc.*, 824 F. Supp. 2d 476, 481 (S.D.N.Y. 2011). This special solicitude is not unlimited, however, and does not "relieve" a plaintiff of his or her "duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation mark omitted). Nor is the "duty to liberally construe a plaintiff's [opposition] . . . equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (quoting 2 Moore's Federal Practice § 12.34[1] [b], at 12-61 (internal quotation marks omitted)).

## B. Analysis

Discrimination claims brought pursuant to the ADEA are examined under the well-established *McDonnell Douglas* burden-shifting test. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105-06 (2d Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under that framework, the plaintiff bears the initial burden to establish a prima facie case of age discrimination by showing "(1) that [he] was within the protected age group, (2) that [he] was qualified for the position, (3) that [he] experienced adverse employment action, and (4) that the action occurred under circumstances giving rise to an inference of discrimination." *Id.* at 107; *see also* 29 U.S.C. § 631(a) (limiting the application of the ADEA to individuals who are at least forty years old). If the plaintiff makes out a prima facie case, the burden then shifts to the employer "to articulate 'some legitimate, nondiscriminatory reason for its action.'" *Gorzynski*, 596 F.3d at 106 (quoting *McDonnell-Douglas*, 411 U.S. at 802).

Assuming the employer does so, the presumption of discrimination "drops from the picture" and the plaintiff must then come forward with evidence that the proffered reason is a mere pretext for discrimination. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). In order to satisfy his burden at this final stage, the plaintiff in an ADEA case "'must prove, by a

preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action' and not just a contributing or motivating factor." *Gorzynski*, 596 F.3d at 106 (quoting *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 180 (2009)).

Applying these standards here, Plaintiff's claim fails as a matter of law because there is no evidence that his non-reappointment occurred under circumstances giving rise to an inference of discrimination, as required to establish a prima facie case. In arguing otherwise, Plaintiff relies on the following: (1) alleged statements by Diaz to Mary Williams, a former professor at HCC, that Plaintiff was not reappointed because of prior grievances and student complaints; (2) comments made by Dicker and Kane that Plaintiff perceived to be "ageist"; (3) the fact that Diosa, the Chair's secretary, referred to Rosenfeld as "el viejo"; (4) assertions that HCC was concerned with the higher costs associated with senior, and thus older, faculty; and (5) articles discussing age discrimination in academia generally and data regarding newly appointed tenure-track faculty in HCC's English, Education, and Mathematics Departments. Even taken together, however, this alleged evidence does not give rise to an inference of discrimination.

First, Diaz's alleged statements cannot be considered by the Court in deciding a motion for summary judgment, as they would be inadmissible at trial. Notably, Rosenfeld fails to submit an affidavit from anyone with first-hand knowledge of Diaz's alleged comments that Rosenfeld was not reappointed due to student complaints and past grievances. *See* Fed. R. Civ. P. 56(c)(4). Instead, Rosenfeld admits that he learned about Diaz's alleged statements to Williams from a third person, his union representative, who had spoken to Williams. (Pl.'s Mot. Summ. J. 2, 6; Pl.'s Opp'n 2, 15). The statements are thus triple, or possibly quadruple, hearsay and may not be considered by the Court. *See, e.g.*, *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). In any event, even if they could be considered,

8

Diaz's alleged statements have nothing to do with age whatsoever and thus, as a matter of law, cannot support an inference of discrimination on the basis of age.

Second, that Dicker called Rosenfeld's "ideas" old and that Kane once asked him if he was a "retired school teacher" do not raise an inference of discrimination. (Rosenfeld Dep. at 62:9-16, 63:18-21). Even if reasonably perceived to be "ageist," these stray remarks, "without more," and with no nexus to the adverse employment action in this case, would not support such an inference. *See, e.g.*, *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998); *De la Cruz v. City of N.Y.*, 783 F. Supp. 2d 622, 643 (S.D.N.Y. 2011). Additionally, the statements "cannot be reasonably interpreted as probative of animosity toward older people in general." *Attard v. N.Y.C. Dep't of Educ.*, No. 05-CV-2129 (JG) (RML), 2010 WL 3893603, at *5 (E.D.N.Y. Sept. 30, 2010) (rejecting the plaintiff's argument that disapproval of his ideas and teaching methods as outdated was evidence of discrimination on the basis of age), *aff'd sub nom. Attard v. City of N.Y.*, 451 F. App'x 21 (2d Cir. 2011) (summary order), *cert. denied*, 132 S. Ct. 1975 (2012). Rosenfeld concedes, for example, that Dicker never made explicit comments about his age and that her comment about his ideas being old was a reflection on his "teaching approach, attitude, theory[ and] philosophy." (Rosenfeld Dep. at 62:2-7, 15-16). And there is nothing inherently offensive, or even questionable, in asking an older adjunct faculty member if he was a retired school teacher.

Nor is the fact that Diosa, a secretary in the English Department, referred to Rosenfeld as "el viejo" any evidence of discrimination. As Plaintiff himself conceded in his Complaint, Diosa's references were "[p]erhaps comical and in the spirit of good fun." (Compl. at 4 ¶ 10). And even if they were not, there is no admissible evidence that Diosa had any decisionmaking authority in the English Department or any role whatsoever in Plaintiff's non-reappointment as

9

an adjunct professor in 2008. Where, as here, allegedly offensive comments are made by a colleague without decisionmaking authority, they are, as a matter of law, not evidence of discrimination. *See De la Cruz*, 783 F. Supp. 2d at 643 (collecting cases); *Gorley v. Metro-North Commuter R.R.*, No. 99 Civ. 3240 (NRB), 2000 WL 1876909, at *6 (S.D.N.Y. Dec. 22, 2000) (same), *aff'd*, 29 F. App'x 764 (2d Cir. 2002) (summary order); *see also Gueye v. Evans*, No. 04 Civ. 6029 (SHS), 2006 WL 3298427, at * 1 n.2, 4 (S.D.N.Y. Nov. 13, 2006) ("[T]hat a co-worker who was not in a supervisory relationship vis-à-vis [plaintiff] and had no role in firing him referred to him as a 'vendejo' [translated as 'fool' or 'idiot,'] does not suggest that his demotion and termination were made with discriminatory intent."), *aff'd sub nom. Gueye v. Gutierrez*, 277 F. App'x 70 (2d Cir. 2008) (summary order).

Next, Plaintiff makes various references to the higher costs associated with senior, and thus older, faculty, suggesting that it is evidence of Defendant's discriminatory intent. Plaintiff was not the oldest adjunct professor of English at HCC, however, as Margery Falk was 78 years old when she was reappointed for the 2008 fall semester. (Diaz Decl. ¶ 26). Moreover, Diaz testified that for the semester in which Plaintiff was not reappointed, the P&B Committee did not review or consider the rate of pay of adjunct professors when determining whom to reappoint. (*Id.* ¶ 15). Even if (as Plaintiff asserts (Pl.'s Opp'n 9)) this testimony is false, however, and Defendant did act out of concern for the higher costs associated with more senior faculty, that would not give rise to an ADEA claim. As the Supreme Court and Second Circuit have held, "concern with the elevated costs of senior employees does not constitute age discrimination" in a disparate treatment case such as this one. *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 153 (2d Cir. 2000) (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993)).

10

Lastly, Plaintiff attempts to show a practice of age discrimination at HCC through various Internet articles discussing age discrimination in academia generally and data concerning the newly appointed tenure-track faculty in HCC's English, Education, and Mathematics Departments. (Pl.'s Mot. Summ. J. Exs. B, C). The articles, however, cannot be considered as they are hearsay and, in any event, unrelated to the specific employment action at issue in the present case. And the data is both irrelevant as it pertains to the appointment of *tenure-track* faculty, not adjunct faculty, and, in any event, largely unhelpful to Plaintiff.[3] The data for the Education and Math Departments, for example, actually hurt Plaintiff's case, as sixteen of twenty-two tenure-track appointees from 2002 to 2008 were actually within the class protected by the ADEA — including five over the age of fifty and two over the age of sixty. (*Id.* Ex. C, at 1-2). And while the English Department, where Rosenfeld worked made only one appointment in the protected class, there were only five appointments made overall during that time period, rendering the data virtually meaningless. (*Id.*).

The more relevant data — regarding the reappointment of adjunct faculty — is even more devastating to Plaintiff's claim. When the P&B Committee recommended against Plaintiff's reappointment, it simultaneously recommended the reappointment of eighteen adjunct professors, four of whom were of similar age to Rosenfeld and one of whom was almost ten years older than he was. Moreover, the one other adjunct professor not recommended for reappointment was only thirty-eight years old — that is, not only significantly younger than Rosenfeld was, but also not within the ADEA's protected class. This data is significant evidence

---

[3] In his motion papers and opposition brief, Rosenfeld refers to several prior unsuccessful applications for a tenure-track appointment at HCC. (*See* Pl.'s Mot. Summ. J. 5; Pl.'s Opp'n 5). Any age discrimination claim with respect to those employment decisions would be subject to dismissal as both untimely and unexhausted. *See, e.g.*, *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 82-83 (2d Cir. 2001).

of the lack of any age discrimination.  *Cf. O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) (stating that one "reliable indicator" of age discrimination is "the fact that a replacement is substantially younger than the plaintiff"); *Schwartz v. York Coll.*, No. 06-CV-6754 (RRM) (LB), 2011 WL 3667740, at *9 (E.D.N.Y. Aug. 22, 2011) (noting that "great significance is accorded to the age difference between the plaintiff and the applicant hired in ADEA cases"); *accord Hodges v. Rensselaer Hartford Graduate Ctr., Inc.*, No. 3:06-CV-850 (PCD), 2008 WL 793594, at *6 (D. Conn. Mar. 20, 2008) (finding an inference of age discrimination where a terminated professor's duties were taken on by younger professors).

In short, the admissible evidence relied on by Plaintiff, even viewed in his favor, does not show that his non-reappointment occurred under circumstances giving rise to an inference of discrimination.  That, by itself, would warrant summary judgment in Defendant's favor, but there is even more evidence supporting dismissal of Plaintiff's claim.  First, Diaz, who served as Chair of the English Department and the P&B Committee when the decision was made not to reappoint Rosenfeld, was approximately sixty-six years old at that time — only a few years younger than Plaintiff himself.  (*See* Diaz Decl. ¶ 1 (indicating that as of June 28, 2012, Diaz was seventy years old)).  It is well established that "where the plaintiff and the individual whose conduct is at issue are members of the same protected class, the inference that the conduct constitutes . . . discrimination is weakened."  *Waters v. Gen. Bd. of Global Ministries*, 769 F. Supp. 2d 545, 554 (S.D.N.Y. 2011) (citing cases).

Additionally, the conclusion that Plaintiff has failed to establish an inference of discrimination is supported by the arbitrator's conclusion that "there [was] no evidence of probative value that [Rosenfeld] was let go due to his age."  (Ng Decl. II Ex. 1 at 8; *see also id.* at 9 ("Rosenfeld's contention [that] he was let go because of his age is unsupported by the

record.")). As the Second Circuit has explained, although "a negative arbitration decision rendered under a [collective bargaining agreement] does not preclude a[n ADEA] action by a discharged employee[,] . . . . a decision by an independent tribunal that is not itself subject to a claim of bias will attenuate a plaintiff's proof of the requisite causal link." *Collins v. N.Y.C. Transit Auth.*, 305 F.3d 113, 119 (2d Cir. 2002) (citation omitted); *see also, e.g.*, *Attard*, 451 F. App'x at 24 (applying *Collins* in an ADEA case). More specifically, "[w]here . . . that decision follows an evidentiary hearing and is based on substantial evidence," the plaintiff, "to survive a motion for summary judgment, must present strong evidence that the decision was wrong as a matter of fact — e.g. new evidence not before the tribunal — or that the impartiality of the proceeding was somehow compromised." *Collins*, 305 F.3d at 119. Plaintiff's conclusory assertions here — that "[t]he arbitrator disregarded testimony at the hearings, documents, and Federal court depositions" (Pl.'s Mot. Summ. J. 2; *see also* Pl.'s Opp'n 2-3) — are not evidence, let alone "strong evidence" that the arbitrator's decision was wrong as a matter of fact.

In sum, Rosenfeld has not established a prima facie case of discrimination because there is no evidence that his non-reappointment occurred under circumstances giving rise to an inference of discrimination. In the alternative, Plaintiff's claim would fail at the third stage of the *McDonnell Douglas* analysis for largely the same reasons. That is, Defendant has undeniably put forward a legitimate, non-discriminatory reason for Plaintiff's non-reappointment: namely, performance issues, as reflected in the 2007 student evaluations and Grindley's 2008 classroom observation report. (Def.'s Mem Supp. Summ. J. 11-14). Under *McDonell-Douglas*, the burden would thus shift back to Plaintiff, who would have to show — without the presumption of discrimination generated by the prima facie case — that Defendant's proffered reason is a mere pretext for discrimination. *See Weinstock*, 224 F.3d at 42. More specifically, under the ADEA,

13

Plaintiff would have to "prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action and not just a contributing or motivating factor." *Gorzynski*, 596 F.3d at 106 (internal quotation mark omitted). In light of the evidence discussed above, no reasonable jury could find that Plaintiff has done so.

None of that is to say that Plaintiff lacks any cause to feel aggrieved by his treatment. Given that Rosenfeld had taught at HCC for twenty-two years, one might have thought that he would be given a better reason for his non-reappointment than eight students in one class giving him negative evaluations and a single, not altogether negative, teaching observation. Moreover, it is odd that both the Chair and Deputy Chair of the P&B Committee were unable to recall the Committee's final vote, and that the Deputy Chair could not recall the reasons for not reappointing Rosenfeld or her own vote. (Pl.'s Opp'n Ex. V, at 28:16-29:12; *id.* Ex W, at 75:8-15). But there is no presumption of reappointment for adjunct faculty, who work semester to semester (Diaz Dec. ¶ 8), and pursuant to the collective bargaining agreement with CUNY, Rosenfeld was not entitled to a statement of reasons for his reappointment. (*See* Ng. Decl. I, Ex. D, art. 9.9).

More fundamentally, none of these facts relates to Plaintiff's age or otherwise indicates that HCC discriminated on the basis of (or, for that matter, was even concerned about) Plaintiff's age. And, as the Second Circuit has explained, "the ADEA does not make employers liable for doing stupid or even wicked things; it makes them liable for *discriminating*, for [taking adverse actions against] people on account of their age." *Norton v. Sam's Club*, 145 F.3d 114, 120 (2d Cir. 1998) (emphasis in original); *see also Dister v. Cont'l Grp. Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988) ("Evidence that an employer made a poor business judgment in discharging an employee generally is insufficient to establish a genuine issue of fact as to the credibility of the

employer's reasons."); *Kalra v. HSBC Bank USA, N.A.*, 567 F. Supp. 2d 385, 397-98 (E.D.N.Y. 2008) (finding that a supervisor's negative performance reviews and comments did not give rise to an inference of age discrimination where reviews and comments were unrelated to plaintiff's age), *aff'd*, 360 F. App'x 214 (2d Cir. 2010) (summary order).

## CONCLUSION

For the reasons discussed above, Defendant's motion for summary judgment is GRANTED and the Complaint is dismissed. Plaintiff's motion for summary judgment is therefore DENIED.

The Clerk of the Court is directed to close the case and to send a copy of this Opinion and Order to Plaintiff. In addition, pursuant to the Court's Order of June 14, 2012 (Docket No. 41), Defendant's counsel is directed to serve a copy of this Opinion and Order upon Plaintiff by e-mail within 24 hours and to promptly file proof of such service.

SO ORDERED.

Dated: March 29, 2013
      New York, New York

_____
JESSE M. FURMAN
United States District Judge